USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/29/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW Y-CAPP, INC., ET AL., <br><br> Plaintiffs, <br><br> -v.- <br><br> ARCH CAPITAL FUNDING, LLC, ET AL., <br><br> Defendants | 18-CV-3223 (ALC) <br><br> **OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

## INTRODUCTION

The New Y-Capp, Inc. ("Y-Capp") and Radiant Images, Inc. ("Radiant"), along with Jonathan Eugene Coleman, Donna Zemoria Pierce-Baylor, and Gianna Wolfe (collectively, "Plaintiffs") bring this action against Arch Capital Funding, LLC ("Arch"), High Speed Capital, LLC ("HSC"), Yellowstone Capital, LLC, MCA Recovery, LLC, and Yellowstone Capital West, LLC ("YCW"), as well as Tsvi H. Davis, Yitzhak D. Stern, and Avraham Y. Weinstein (collectively, "Defendants"). Plaintiffs allege coordinated and predatory lending practices in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962, conspiracy in violation of 18 U.S.C. § 1962(d), fraud, and wrongful execution, among other things.

## PROCEDURAL HISTORY

Plaintiffs initiated this action with the filing of their Complaint on April 12, 2018. ECF No. 1. On July 25, 2018, the Court granted Plaintiffs leave to amend their Complaint. ECF No. 35. In the Order granting leave to amend, the Court noted that the Complaint was not a "model of

clarity." *Id.* In the same order, the Court granted Defendants leave to file motions to dismiss Plaintiffs' Amended Complaint. *Id.*

Pursuant to this Court's Order, Plaintiffs filed their Amended Complaint ("FAC") on August 8, 2018. ECF No. 36. Defendants proceeded to file three separate Motions to Dismiss. On October 5, 2018, Defendants Tsvi H. Davis, High Speed Capital, LLC, Yitzhak D. Stern, Avraham Y. Weinstein, and Yellowstone Capital, LLC (hereinafter, "High Speed Defendants") filed their Motion along with supporting documents. ECF Nos. 47-52. On the same day, Arch Capital Funding, LLC and MCA Recovery, LLC (hereinafter, "Arch Defendants") filed their Motion. ECF Nos. 53-54. On October 8, 2018, Defendant Yellowstone Capital West ("YCW") filed its own Motion. ECF Nos. 55-58.

On October 18, 2018, the Court granted Plaintiffs' request to file a Consolidated Opposition to Defendants' respective Motions. ECF Nos. 61, 63. Plaintiffs filed their Consolidated Opposition on October 19, 2018. ECF No. 64. Defendants filed their various Replies to Plaintiffs' Opposition on October 26, 2018. ECF Nos. 69-71.

Defendants' Motions are considered fully briefed, and the Court addresses them in this consolidated Opinion and Order. After careful consideration, Defendants' Motions to Dismiss are **DENIED**, without prejudice, and Plaintiffs are hereby **GRANTED** leave to amend their Complaint once again.

## BACKGROUND[1]

As alleged in the FAC, Yellowstone is a merchant cash advance ("MCA") company that provides predatory loans to struggling small businesses. FAC ¶¶ 4-12. In short, Plaintiffs allege

---

[1] When determining whether to dismiss a case, a court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Pursuant to that standard, this recitation of facts is based on Plaintiff's First Amended Complaint and accompanying submissions. *See* ECF No. 36.

that Yellowstone, and other similarly situated companies, drain small businesses of funds and prey upon the newly established vulnerability by forcing struggling businesses into a never-ending cycle of debt and dependence. *Id.*

Yellowstone itself was founded in 2009 and has continued to expand by buying smaller companies in the MCA business. FAC ¶¶ 41, 48. Yellowstone now controls multiple such entities including Defendants Arch, HSC, and YCW, among others. *Id.* ¶ 48. Plaintiffs claim that the majority of these MCA companies operate out of Yellowstone's headquarters in New Jersey despite being organized under the laws of New York. *Id.* ¶¶ 48-49. Plaintiffs allege that Defendants are engaged in a joint scheme (hereinafter, the "Enterprise") "designed to drain" small businesses with "unconscionable" interest rates on loans disguised as MCA agreements. FAC ¶¶ 4-6. Defendants' conduct, according to the FAC, is just one example of the "growing epidemic" that is predatory lending practices. *Id.* ¶ 12.

Plaintiff Radiant alleges that it obtained a loan from YCW on March 30, 2016. FAC ¶ 92. YCW advanced $140,000 to Radiant in exchange for the repayment of $189,000 over time. *Id.* ¶ 95. Both Radiant and YCW satisfied their obligations under the first loan. *Id.* ¶ 98. In July of 2018, Radiant again was in need of financial help. *Id.* ¶ 99. Radiant required additional support to make payments on a previously entered into loan with Queen Funding, LLC ("Queen"). *Id.* Jay Baron offered Radiant financing through YCW – $80,000 with a repayment amount of $116,720 over time. *Id.* ¶¶ 100-02. After an adjustment, the agreement required eighty (80) fixed payments as opposed to the originally contemplated 120 fixed payments to satisfy the repayment amount owed by Radiant. *Id.* ¶¶ 104-106. Plaintiffs contend that additional fees, the fixed daily payments, and the requirement that Radiant and Wolfe execute an affidavit confessing judgment all acted simply to disguise the true nature of the predatory transaction. *Id.* ¶¶ 111-116.

Y-CAPP entered into a merchant agreement with the Enterprise, via Yellowstone, in 2012. FAC ¶¶ 121-22. Y-CAPP states that due to the constant solicitation of additional loans to pay the remaining balance on outstanding loans Y-CAPP plunged into a "never ending cycle of debt." *Id.* ¶¶ 124-27. In total, the Enterprise entered into nineteen (19) loans with Y-CAPP. *Id* ¶. 129. Y-CAPP claims that the interest rates were disguised on the face of the agreements, hiding Defendants actual receipt of a "usurious rate of interest far in excess of 25%."[2] *Id.* ¶¶ 129-30.

Plaintiffs allege that the MCA agreements used by the Enterprise "are a mere cover for the usurious nature of the transaction." FAC ¶ 223. Plaintiffs claim that each transaction was an advance of money with interest that was repayable over a fixed period of time. *Id.* ¶ 224.

Plaintiffs allegations also suggest that Yellowstone fraudulently required Plaintiffs to sign at least one affidavit confessing judgment. FAC ¶ 228. The Complaint spells out the continued financial difficulties Y-CAPP experienced through its relationship with the Enterprise. *Id.* ¶¶ 229-234. After falling behind, Y-CAPP requested extensions on the daily payments due to their inability to pay. *Id.* Tsvi David refused to grant extensions, disregarded Y-CAPP's requests for relief, and instructed MCA Recovery to obtain judgment by confession against Y-CAPP and others. *Id.* ¶¶ 239-243. In support of these judgments, Plaintiffs allege that Yellowstone fraudulently submitted at least one false affidavit. *Id.* ¶ 243.

## DISCUSSION

As stated, on July 25, 2019, the Court granted Plaintiffs leave to amend their Complaint in an effort to better understand the nature of Plaintiffs' claims. ECF No. 35. While Plaintiffs did provide some clarity, the Court is still faced with significant questions regarding the nature and scope of Plaintiffs' claims. For those reasons, the Court addresses certain procedural arguments

---

[2] Plaintiffs allege interest rate on the various loans ranging from 42% - 553%. FAC ¶¶ 131-221.

offered by Defendants and grants Plaintiffs leave to amend their Complaint for a second, and hopefully final, time.

**I.   Subject Matter Jurisdiction**

The Complaint indicates that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2). Plaintiffs' FAC alleges a RICO conspiracy in violation of 18 U.S.C. § 1962, thus giving rise to federal question jurisdiction pursuant to 28 U.S.C. § 1331. Additionally, Plaintiffs have alleged class claims that confer jurisdiction upon this court pursuant to 28 U.S.C. § 1332(d)(2).

> **a.   The *Rooker-Feldman* Doctrine Mandates that this Court Abstain from Exercising Subject Matter Jurisdiction over Orders of Final Judgment**

Despite the initial indication that this Court has subject matter jurisdiction, the *Rooker-Feldman* doctrine requires this Court to abstain from exercising subject matter jurisdiction over state court final judgments. Because the existence of subject matter jurisdiction is a threshold question, the Court must resolve jurisdictional issues before delving into the merits of a dispute. *See McCrory v. Administrator of Federal Emergency Management Agency of U.S. Dept. of Homeland Sec.*, 22 F.Supp.3d 279, 286-87 (S.D.N.Y. 2014). This Court, however, cannot determine the applicability of the *Rooker-Feldman* doctrine to Plaintiffs' claims in their entirety based on the FAC in its current state.

"Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green. v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). For the *Rooker-Feldman* doctrine to apply, four requirements must be met: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries cause by a state-court judgment; (3) the

plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Sung Cho v. City of New York*, 910 F.3d 639, 644-45 (2d Cir. 2018). The *Rooker-Feldman* doctrine is meant to be narrowly interpreted and only apply to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)). In those cases, however, the *Rooker-Feldman* doctrine requires a federal district court to abstain from exercising subject-matter jurisdiction. *See Fernandez v. Turetsky*, 645 Fed.Appx. 103, 104 (2d Cir. 2016).

Plaintiffs' FAC makes it impossible for the Court to determine whether this is a "case brought by state-court losers" and whether Plaintiffs "complain of an injury caused by a state-court judgment." *See Green*, 585 F.3d at 101; *Sung Cho*, 910 F.3d at 646. While Plaintiffs allege the existence of multiple contracts between various Plaintiffs and Defendants, the vast majority of Plaintiffs' claims revolve around one such contract. *See* FAC. Plaintiffs spend a significant portion of their FAC discussing a contract between Y-CAPP and Yellowstone. *Id.* ¶¶ 223-43. Plaintiffs provide what seem to be text messages or e-mails discussing the scope and nature of that one particular transaction between Y-CAPP and Yellowstone. FAC ¶¶ 225-27. Furthermore, Plaintiffs allege that the same contract terminated with an allegedly fraudulent judgment obtained by Yellowstone against Y-CAPP, Coleman, and Pierce-Baylor totaling $613,746.13. *Id.* ¶¶ 39, 228-243. Plaintiffs use these details and allegations to support all claims by all Plaintiffs, including those members of a proposed class. *Id.* Based on the narrow focus of Plaintiffs FAC, the Court cannot determine whether all contracts and agreements operated in the same fashion and whether the injuries complained of stem from the same processes.

plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Sung Cho v. City of New York*, 910 F.3d 639, 644-45 (2d Cir. 2018). The *Rooker-Feldman* doctrine is meant to be narrowly interpreted and only apply to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)). In those cases, however, the *Rooker-Feldman* doctrine requires a federal district court to abstain from exercising subject-matter jurisdiction. *See Fernandez v. Turetsky*, 645 Fed.Appx. 103, 104 (2d Cir. 2016).

Plaintiffs' FAC makes it impossible for the Court to determine whether this is a "case brought by state-court losers" and whether Plaintiffs "complain of an injury caused by a state-court judgment." *See Green*, 585 F.3d at 101; *Sung Cho*, 910 F.3d at 646. While Plaintiffs allege the existence of multiple contracts between various Plaintiffs and Defendants, the vast majority of Plaintiffs' claims revolve around one such contract. *See* FAC. Plaintiffs spend a significant portion of their FAC discussing a contract between Y-CAPP and Yellowstone. *Id.* ¶¶ 223-43. Plaintiffs provide what seem to be text messages or e-mails discussing the scope and nature of that one particular transaction between Y-CAPP and Yellowstone. FAC ¶¶ 225-27. Furthermore, Plaintiffs allege that the same contract terminated with an allegedly fraudulent judgment obtained by Yellowstone against Y-CAPP, Coleman, and Pierce-Baylor totaling $613,746.13. *Id.* ¶¶ 39, 228-243. Plaintiffs use these details and allegations to support all claims by all Plaintiffs, including those members of a proposed class. *Id.* Based on the narrow focus of Plaintiffs FAC, the Court cannot determine whether all contracts and agreements operated in the same fashion and whether the injuries complained of stem from the same processes.

Plaintiffs' FAC asks this Court to remedy the "unlawful entry and enforcement of judgment," the fraudulent nature of which is also demonstrated by Plaintiffs' reliance on the one Y-Capp and Yellowstone transaction. FAC ¶¶ 319, 327, 340. In support of their claims of fraud, Plaintiffs cite to one affidavit relied upon by the Clerk of Erie County, New York, in entering final judgment. *Id.* ¶¶ 335-39. As it is currently constructed, Plaintiffs' FAC directly attacks the final judgments entered by the state court. Specifically, Plaintiffs seek declaratory relief "declaring that the affidavits confessing judgment in connection with each of the criminally usurious loans ... are thus void and unenforceable" to remedy the "unlawful entry and enforcement of judgments" – a cognizable injury suffered by Plaintiffs. *Id.* ¶¶ 319, 327, 340, 371. However, as stated, the number of and similarities between the alleged contracts is unknown, and the Court cannot determine whether, as Plaintiffs describe it, a "single state court judgment, concerning a single transaction with Y-CAPP" requires this Court to abstain from exercising subject matter jurisdiction in accordance with *Rooker-Feldman*. Pls.' Mem. Opp. Mot. p. 4, ECF No. 64 ("Pl. Opp").

In as much as the subsequent contracts alleged fit the same mold as the Y-CAPP and Yellowstone contract ending in final judgment, the *Rooker-Feldman* doctrine will likely control, as this court will not entertain any efforts by Plaintiffs to relitigate state court final judgments. *See Green*, 385 F.3d at 101. However, because Plaintiffs' FAC indicates that differences may exist between the contracts involved in this dispute, the Court exercises its discretion and grants Plaintiffs leave to amend their FAC to provide more clarity and detail about the nature of the various contracts and the precise relief sought.

## II. If the Court May Continue to Exercise Subject Matter Jurisdiction, the Court must also Address Personal Jurisdiction

While questions remain as to subject matter jurisdiction, for contracts not seeking a Court order invalidating state court final judgments, this Court must determine if Plaintiffs have sufficiently alleged personal jurisdiction.

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)). Here, no Defendants claim that Plaintiffs have failed to sufficiently allege Defendants' purposeful availment of the laws of New York. Rather, the High Speed Defendants argue that personal jurisdiction is lacking over Defendants Davis and Weinstein[3] for procedural reasons. Specifically, the High Speed Defendants claim that Plaintiffs failed to timely and properly effect service of process. High Speed Capital Mem. Supp. Mot. p. 12, ECF No. 51 ("High Speed Mot.").

"When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). Rule 4 of the Federal Rules of Civil Procedure governs service of a summons and complaint. *See Zhang v. Baidu.com Inc.*, 932 F.Supp.2d 561, 564 (S.D.N.Y. 2013). Fed. R. Civ. P. 4(e)(1) states that an individual may appropriately be served by "following state law for serving a summons ..." CPLR § 308 governs service of process in New York. *See Hoffman v. Ighodaro*, 2016 WL 6093236, at *4 (S.D.N.Y. Sept. 28, 2016). CPLR § 308(2) states, in part, that service upon a

---

[3] Defendants also claim that Plaintiffs have not adequately served Weinstein. High Speed Mot. p. 13. While Weinstein is briefly mentioned in the FAC, he is not named as a Defendant in the FAC, nor do Plaintiffs list Weinstein as a Party in their FAC. *See* FAC. Further, Plaintiffs do not refute Defendants' claims that Weinstein was not properly served. As it stands, Plaintiffs have failed to sufficiently allege personal jurisdiction over Weinstein. *See Licci*, 732 F.3d at 167.

8

natural person may be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" along with mailing the summons to either the residence or place of business of the person to be served. Further, "[i]n New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service." *Fallman v. Hotel Insider, Ltd.*, 2016 WL 5875031, at *3 (S.D.N.Y. Oct. 7, 2016) (quoting *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)).

Plaintiffs filed the Affidavit of Ligno Sanchez, a process server, in conjunction with their affidavit of service. ECF No. 23 ("Sanchez Aff."). According to the Affidavit, on July 2, 2018, Mr. Sanchez served the Summons and Complaint at 2201 Avenue M, Brooklyn, NY 11210. *Id.* Mr. Sanchez personally delivered the Summons and Complaint and left it with Sugey Gonzalez, "a person of suitable age and discretion at that address, the actual place of residence of the defendant." *Id.* While Defendants contend that Ms. Gonzalez does not reside at the dwelling where process was served, there is no requirement that Ms. Gonzales reside at that location. *See* CPLR § 308(2). As such, Plaintiffs appropriately served Defendant Davis.[4]

### III. Res Judicata Precludes this Court from Relitigating State Court Final Judgments

If the Court maintains subject matter jurisdiction, the Court will next have to determine if the doctrine of res judicata precludes this Court from ruling on this case.

Res Judicata operates in a fashion similar to that of the *Rooker-Feldman* doctrine. The purpose of res judicata is to "bar successive litigation based upon the same transaction or series

---

[4] Defendants also argue that service is not complete until ten (10) days after the filing of a certificate of service with the Court. High Speed Mot. p. 13. However, "federal court jurisdiction is not dependent on the technicality of New York state procedure requiring ten days after filing proof of service for service to be deemed complete." *Stan Winston Creatures, Inc. v. Toy "R" Us, Inc.*, 324 F.Supp.2d 177, 181 (S.D.N.Y. 2003) (in the context of removal jurisdiction); *see Creative Kids Far East Inc. v. Griffin*, 2016 WL 8710479, at *2 (S.D.N.Y. Jan. 22, 2016).

of connected transactions." *RA Global Services, Inc. v. Avicenna Overseas Corp.*, 843 F.Supp.2d 386, 389 (S.D.N.Y. 2012). More specifically, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Gurdon v. Bank*, 2016 WL 721019, at *4 (S.D.N.Y. Feb. 23, 2016). For res judicata to apply, three conditions must be met: (1) the previous action was adjudicated to the merits; (2) the party against whom the doctrine is invoked, or someone in privity with her, was a party to the previous action; and (3) the claims at issue were, or could have been, raised in the prior action. *See id*; *RA Global*, 843 F.Supp.2d at 389. "New York courts treat confessions of judgments like consent decrees; these are, in turn, treated the same as a final judgment after trial." *Tripoint Global equities, L.L.C. v. Fasolino*, 2013 WL 5677126, at *9 (S.D.N.Y. Oct. 18, 2013) (citing *Canfield v. Elmer E. Harris & Co.*, 170 N.E. 121 (N.Y. 1930)).

For the same reasons articulated above, this Court deems it appropriate to grant Plaintiffs leave to Amend their FAC. It is likely that the doctrine of res judicata will preclude this Court from relitigating those contracts similar to the Y-CAPP and Yellowstone contract heavily cited in the FAC – those ending in state court final judgments. Plaintiffs themselves foresee preclusive impact of res judicata on the transaction most heavily featured in the FAC. Pl. Opp. p. 7 ("At most, res judicata would apply to the single transaction that is currently being attacked in state court.") Because the Court does not yet have a clear picture of the nature of the transactions and the judgments from which Plaintiff seeks relief, the Court finds that further amendment is both judicially efficient and proper.

## CONCLUSION

Before the Court can decide on the ultimate question of whether these agreements are usurious loans or legal asset purchase agreements, the jurisdictional questions must be answered.

10

As such, Defendants' Motions to Dismiss are hereby **DENIED**, without prejudice. Plaintiff is hereby **GRANTED** leave to amend the FAC once more in an effort to clarify the nature of the agreements, the precise injuries suffered and remedies sought, and the scope and similarity of the agreements entered into. Plaintiffs are further directed to amend the caption to reflect the names of the appropriate Parties.[5] Moreover, Plaintiffs are directed to only include allegations within the appropriate and respective statutes of limitations.[6] Should Plaintiffs seek to add additional Parties, they must request leave to do so, in writing.[7] Following Plaintiffs' amendment, Defendants are granted leave to file their Motions to Dismiss. The Parties are hereby **ORDERED** to proceed in accordance with the following briefing schedule:

| | |
|---|---|
| **Plaintiffs' Second Amended Complaint** | October 25, 2019 |
| **Defendants' Motions to Dismiss** | November 22, 2019 |
| **Plaintiffs' Opposition** | December 13, 2019 |
| **Defendants' Reply** | January 3, 2019 |

---

[5] In their Motion to Dismiss, The Arch Defendants claim that Plaintiffs' FAC should be dismissed against MCA Recovery because MCA Recovery is not named in the caption of the FAC – a violation of Fed. R. Civ. P. 10. Arch Capital Mem. Supp. Mot. p. 8, ECF No. 54 ("Arch Mot."). While Rule 10(a) does provide that "[t]he title of the complaint must name all the parties," courts should "excuse technical pleading irregularities as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party." *Shariff v. United States*, 689 Fed.Appx. 18, 19 (2d Cir. 2017) (quoting *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005)). While the Court excuses Plaintiffs' typographical error, this argument is moot due to this Court's Order granting Plaintiff leave to amend.

[6] The Parties agree that the applicable statute of limitations for RICO claims is four years. *See* High Speed Mot. p. 22; Pl. Opp. p. 8; *Koch v. Christie's Inter. PLC*, 699 F.3d 141, 148 (2d Cir. 2012). As such, Plaintiffs should not include allegations supporting their RICO claim occurring prior to April 12, 2014.

[7] Both the High Speed Defendants and YCW claim that the Court should "dismiss all allegations by Radiant, Wolfe, and the proposed putative class pursuant to Fed. R. Civ. P. 21." High Speed Mot. p. 16; Yellowstone Capital West Mem. Supp. Mot. p. 4, ECF No. 57. Fed. R. Civ. P. 21 states that "[m]isjoinder of parties is not a ground for dismissing an action." Rather, "[o]n a motion or on its own, the court may at any time, on just terms, add or drop a party." The Court granted Plaintiffs leave to amend their Complaint on July 25, 2018. ECF No. 35. In doing do, and prior to the filing or a responsive pleading, Plaintiffs amended their Complaint and added Plaintiffs Radiant and Wolfe as well as Defendant YCW. *See* FAC. To this point, Plaintiffs have not violated Fed. R. Civ. P. 21.

SO ORDERED.

Dated: September 27, 2019
      New York, New York

_____
**ANDREW L. CARTER, JR.**
United States District Judge