USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/16/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW Y-CAPP, INC., JONATHAN EUGENE COLEMAN, DONNA ZEMORIA PIERCE-BAYLOR, RADIANT IMAGES, INC., and GIANNA WOLFE, *individually and on behalf of all others similarly situated*,

**Plaintiffs,**

-against-

ARCH CAPITAL FUNDING, LLC, MCA RECOVERY, LLC, HIGH SPEED CAPITAL, LLC, YELLOWSTONE CAPITAL, LLC, YELLOWSTONE CAPITAL WEST, LLC, TSVI H. DAVIS; YITZHAK D. STERN, and THE JOHN AND JANE DOE INVESTORS ,

**Defendants.**

1:18-CV-03223 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Plaintiffs The New Y-CAPP, Inc. ("Y-CAPP"), Jonathan Eugene Coleman ("Coleman"), Donna Zemoria Pierce-Baylor ("Pierce-Baylor"), Radiant Images, Inc. ("Radiant"), and Gianna Wolfe ("Wolfe") bring this action against Defendants Arch Capital Funding, LLC ("Arch Capital"), MCA Recovery, LLC ("MCA Recovery"), High Speed Capital, LLC ("HSC"), Yellowstone Capital, LLC ("Yellowstone"), Yellowstone Capital West, LLC ("YCW"), and individual Defendants Tsvi Davis ("Davis") and Yitzhak Stern ("Stern"). Plaintiffs allege coordinated and predatory lending practices in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962, conspiracy in violation of 18 U.S.C. § 1962(d), fraud, and wrongful execution. Defendants collectively filed four different motions to dismiss Plaintiffs' Second Amended Complaint. For the reasons set forth below, Defendants' motions are **DENIED** without prejudice and Plaintiffs are **GRANTED** leave to amend their complaint.

1

**INTRODUCTION**

Plaintiffs allege that Defendants provided funds to small businesses through financial instruments that purported to be assert purchase agreements but were, in actuality, loans. As part of the agreements, Defendants required Plaintiffs to sign an affidavit confessing judgment. On December 6, 2017 a state court issued a judgment by confession for Yellowstone against Y-CAPP, Coleman, and Pierce-Baylor. Defendants argue that Plaintiffs claims are barred by the *Rooker-Feldman* doctrine because Plaintiffs are state-court losers who complain of injuries caused by a state-court judgment, and because Plaintiffs invite this Court to review and reject the state-court judgment. However, after Plaintiffs filed their amended complaint, the state court vacated the judgment for the express purpose of having this Court decide the action.

The *Rooker-Feldman* doctrine does not apply to a vacated state court judgment when that judgment is vacated to allow a federal court to decide the action. Since the one identified state court judgment in this case has been vacated, the *Rooker-Feldman* doctrine does not apply. However, since the factual and legal circumstances have changed in light of the state court vacatur, and since Plaintiffs have only identified one (now-vacated) state-court judgment, the Court grants Plaintiffs leave to amend their complaint.

**BACKGROUND**

The Court provides only a brief summary of the factual background relevant to deciding this motion. The following facts are taken from allegations contained in Plaintiffs' Second Amended Complaint and are presumed to be true for purposes of this motion.

Defendants Yellowstone, YCW, Arch and HSC are led and/or directed by Defendants Davis and Stern, and together with MCA Recovery, are merchant cash advance companies that provide money to struggling small businesses. *See* Second Amended Complaint ("SAC") (ECF

No. 82) at ¶2.  Plaintiffs allege that these five companies, together referred to as the "Enterprise" in Plaintiff's SAC, provide funds to small businesses through instruments that purport to be assert purchase agreements but are, in actuality, loans. *Id.* at ¶3.  According to Plaintiffs, Defendants intentionally avoid the terminology of a loan in an effort to avoid the usury laws of various states and to consequently charge unlawful and unconscionable interest rates. *Id.*

The Enterprise required Plaintiffs to sign an affidavit confessing judgment in order to ensure that the loans were absolutely repayable. *Id.* at ¶289.  In November and December 2017, Y-CAPP was, for various reasons, unable to timely pay Yellowstone.  On December 5, 2017, because Y-CAPP did not have sufficient funds to pay, Defendant Davis instructed MCA Recovery "to obtain a judgment by confession against Y-Capp, Coleman, and Pierce-Baylor totaling $613,746.13." *Id.* at ¶304.  On December 6, 2017, the county clerk entered judgment in the amount of $489,615; $122,403.75 in attorney's fees; and $225.00 in costs for a total of $613.746.13. See Judgement by Confession ("Judgment") (ECF No. 117-3) at 2.  Plaintiffs allege that in the process of obtaining such a judgment, Yellowstone knowingly made false statements in an affidavit sworn under oath. *Id.*

On May 11, 2020, the Supreme Court of New York, Erie County vacated the December 6, 2017 judgment by confession entered against Plaintiffs New Y-CAPP, Coleman, and Pierce-Baylor. *See The New Y-Capp, Inc. v. Yellowstone Capital, LLC*, Index No. 807029-2018 (N.Y. Sup. Ct. May 11, 2020) (ECF No. 123) ("State Vacating Order").  The matter came before the state court pursuant to an Order to Show Cause that was granted by the court on May 4, 2018. *Id.* at 1.  In its May 11, 2020 decision, the state court concluded that "the judgment taken by confession should be vacated until such time as [the factual issues] as well as the legal issues as to the parties' underlying agreement can be properly examined." *Id.* at 4–5.  The court also vacated the underlying

3

money judgment issued December 6, 2017 against Plaintiffs and granted Plaintiffs' motion to dismiss the action. *Id.* at 6.  The court granted the motion to dismiss to "permit the parties to litigate the subject dispute together with the matters already pending in the Federal Court action, which makes the most sense for the sake of judicial economy." *Id.*

Plaintiffs filed this action on April 12, 2018, ECF No. 1.  On July 25, 2018, the Court granted Plaintiffs leave to amend their Complaint, noting that the Complaint was not a "model of clarity." ECF No. 35.  Plaintiffs filed an Amended Complaint on August 8, 2018. ECF No. 36.  The Court granted Defendants leave to file motions to dismiss.  After full briefing, the Court denied Defendants' motions to dismiss and granted Plaintiffs leave to amend their complaint on September 29, 2019. Opinion & Order (ECF No. 77).  Specifically, the Court concluded that Plaintiffs needed to amend their complaint again to "clarify the nature of the agreements, the precise injuries suffered and remedies sought, and the scope and similarity of the agreements entered into." *Id.* at 11.  The Court also granted Defendants leave to file a motion to dismiss the second amended complaint. *Id.*

Plaintiffs filed their second amended complaint on November 1, 2019. ECF No. 82.  Defendants all filed motions to dismiss.  Defendants Arch Capital and MCA Recovery filed a motion to dismiss on December 20, 2019. ECF No. 90.  Plaintiffs opposed on January 10, 2020, ECF No. 93, and Defendants replied on January 30, 2020, ECF No. 96.  Defendants Yellowstone, YSW, and HSC filed a motion to dismiss on April 24, 2020, ECF No. 115.  Defendant Davis filed a motion to dismiss on April 24, 2020, ECF No. 118.  Plaintiffs filed a joint opposition to both of these motions to dismiss on May 8, 2020, ECF No. 122. Defendants Yellowstone, YSW, and HSC replied on June 16, 2020, ECF No. 131; Defendant Davis replied on June 16, 2020, ECF No. 133.

Finally, Defendant Stern filed a motion to dismiss on May 26, 2020. ECF No. 125. Plaintiffs opposed on June 9, 2020, ECF No. 128, and Defendant replied on June 30, 2020, ECF No. 134.

## STANDARD OF REVIEW

When resolving a motion to dismiss under FED. R. CIV. P. 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

The threshold question in this case is whether Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. Specifically, the question is whether a state court judgment that is in effect when a federal complaint is filed, but which is later vacated to allow the federal court to decide the action, qualifies as a "judgment" or renders plaintiff a "state court loser" for purposes of the *Rooker-Feldman* doctrine. For the reasons set forth below, Plaintiffs' claims are not barred by the doctrine, but Plaintiffs must amend their complaint in light of the State Vacating Order.

The *Rooker-Feldman* doctrine requires that federal courts abstain from exercising subject matter jurisdiction over state court final judgments. *Rooker-Feldman* applies to federal actions "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine has four requirements: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites . . . review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam) (quotation marks, citation, and alterations omitted). If these requirements are met, the district court must abstain from exercising subject-matter jurisdiction.

In light of the judgment by confession entered on December 7, 2016 against Plaintiff Y-CAPP, Coleman, and Pierce-Baylor, this Court previously noted that "[a]s it is currently constructed, Plaintiffs' FAC directly attacks the final judgments entered by the state court." Opinion & Order (ECF No. 77) at 7. Since then, however, the Supreme Court of New York, Erie County vacated the December 6, 2017 judgment by confession entered against Plaintiffs New Y-CAPP, Coleman, and Pierce-Baylor. The state court concluded that "the judgment taken by confession should be vacated until such time as [the factual] issues as well as the legal issues as to the parties' underlying agreement can be properly examined." State Vacating Order at 5–7. The court terminated the state court action because "[t]his will permit the parties to litigate the subject dispute together with the matters already pending in the Federal Court action, which makes the most sense for the sake of judicial economy." *Id.* at 6. Plaintiffs argue that the State Vacating Order moots Defendants' *Rooker-Feldman* arguments. Defendants, on the other hand, argue that

6

the state court decision, which is being appealed, is irrelevant because (1) federal courts must have subject matter jurisdiction when a case begins; and (2) because the SAC also challenges "thousands" of other judgments entered against putative class members.

The *Rooker-Feldman* doctrine requires that "the federal-court plaintiff lost in state court" and that the state-court loser's claims invite the review and rejection of a state court "judgment." *Vossbrinck*, 773 F.3d at 426.  Since the judgment entered against Plaintiffs was vacated, Plaintiffs are not a "losing party" for purposes of the *Rooker-Feldman* doctrine and there is no state court "judgment" for this Court to reject.  The Second Circuit's decision in *Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009) is instructive.  In *Green*, a Family Court issued an order temporarily removing Plaintiff's child from her custody.  Four days after the initial hearing and order, the Family Court issued another order returning the child to plaintiff, and the petition was automatically dismissed twelve months later. *Id.* at 100.  The Second Circuit concluded that Plaintiff was not a state-court loser because "there was [] no final 'order of disposition' removing her child and plaintiff secured the reversal of the one form of interlocutory relief entered against her." *Id.* at 102.  The Circuit also noted that Plaintiff was not inviting district court review and rejection of a state court "judgment" because there was no "judgment" to review.  "The only conceivable 'judgment' against plaintiff—the temporary removal of her child—has already been undone." *Id.* at 102. Though the state court judgment in this case was not interlocutory relief, the principles of *Green* are instructive—Plaintiffs in both cases secured the reversal of the state-court judgment entered against them and thus, they are no longer state-court losers and there is no state-court judgment to review or reject.

The purpose of the *Rooker-Feldman* doctrine, and the principles of federalism and comity that underlie it, are also not applicable to this case.  "The rationale underlying the *Rooker-Feldman*

7

doctrine is that only the U.S. Supreme Court—and not lower federal courts—may review and reject state-court decisions under 28 U.S.C. §1257." *Id.* at 102–03 (citation and quotation marks omitted). This rationale is inapposite in a case where there is no state-court judgment to appeal. *Id.* at 103 ("That rationale is undercut if plaintiff had neither a practical reason nor a legal basis to appeal the state-court decision that caused her alleged injuries."). Not only can Plaintiffs not challenge the now-vacated judgment by confession (or, for that matter, the State Vacating Order), but the state court vacated its own judgment for the express purpose of having this Court decide the underlying legal and factual issues. *See* Order, *New Y-Capp* (Erie County Court May 11, 2020) at 7 ("[T]he action is terminated on the grounds that another action is pending where the same issues are in litigation before the Federal District Court in the Southern District of New York and which can more properly be determined by that court."). The state-court order in *Green* was "interlocutory, unappealable, and effectively reversed by a superseding order." *Id.* at 104. Similarly, the state-court order in this case was reversed by a superseding order. Plaintiffs also "raised a number of issues of fact as to the Defendant's filing of the previously executed confession of judgment," which led the state court to determine that "the judgment taken by confession should be vacated until such time as those issues as well as the legal issues as to the parties' underlying agreement can be properly examined." *Id.* at 5–6. The *Rooker-Feldman* doctrine was not intended for this type of case.

The Eleventh Circuit recently addressed the issue in this case squarely in *Berene v. Nationstar Mortg. LLC*, 686 Fed. Appx. 714, 716 (11th Cir. 2017) (unpublished). Though *Berene* has limited persuasive value since it is an unpublished opinion from outside this Circuit, its reasoning is instructive. In *Berene*, the state court parties jointly sought the vacatur of a state court foreclosure judgment as part of a loan modification agreement. *Id.* The Eleventh Circuit declined

8

to "rigidly apply the *Rooker-Feldman* doctrine by considering only the facts that exited when the Appellants filed their initial federal complaint." *Id.* at 717.  Instead, the Eleventh Circuit concluded that "[a]lthough there was a state-court foreclosure judgment entered against Appellants when they filed their initial federal complaint . . . the state court vacated that judgment . . . . Therefore, [at the time the amended complaint was filed], the district court could not collaterally review any state court judgment, as it was clear from the pleadings that the previously final state-court judgment was no longer in effect." *Id.* at 717.  The Circuit noted that "concerns of a district court reviewing a final state-court judgment are not implicated [] due to the subsequent vacatur. Indeed, the lack of a final judgment makes the present situation more akin to concurrent state and federal jurisdiction rather than federal appellate jurisdiction over a state-court judgment." *Id.*  Similarly, in this case, though there was a state-court judgment against Plaintiffs when they filed their initial federal complaint, that judgment has since been vacated and there is no state court judgment for this Court to collaterally review.

       Defendants argue that the Court should apply the time-of-filing rule—which requires a federal court to have subject matter jurisdiction when a case begins—and conclude that the subsequent vacatur of the state-court judgment is irrelevant. *See Grupo Dataflux v. Atlas Glob. Group, L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought.") (citation and quotation marks omitted); *see also Berene*, 686 Fed. Appx. at 717 ("I respectfully dissent because I believe the time-of-filing rule applies in this case.") (Black, Circuit Judge, dissenting).  This argument is ultimately unpersuasive.  Plaintiffs could simply refile this action in this Court now that the state-court judgment has been vacated, and the *Rooker-Feldman* doctrine would not preclude the action, at least based on the one, identified, now-vacated state-court judgment. *See Berene*, 686 Fed.

Appx. at 717 ("Tellingly, if, rather than filing their operative complaint, the Appellants had simply refiled their action after the state court judgment had been vacated, the Rooker-Feldman doctrine would not prevent the district court from exercising jurisdiction over the refiled action."). To rigidly apply the time-of-filing rule in this case would require Plaintiffs to "jump through [] judicial hoops merely for the sake of hypertechnical jurisdictional purity." *Berene*, 686 Fed. Appx. at 717 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989)).

The Court grants Plaintiffs leave to amend their complaint since the circumstances, and Plaintiffs allegations, have potentially changed in light of the State Vacating Order. Additionally, in their SAC, Plaintiffs allege that their injuries were caused by "the unlawful entry and enforcement of *judgments*," SAC ¶380 (emphasis added), but have not identified any other specific state-court judgments besides the now-vacated judgment. In their amended complaint, Plaintiffs should address and identify any other judgments that may be relevant for purposes of the *Rooker-Feldman* doctrine so that the Court can determine whether the doctrine applies.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are hereby **DENIED** without prejudice to refile once Plaintiffs file an amended complaint. Plaintiffs are **ORDERED** to file an amended complaint within thirty days of the filing of this Order.

**SO ORDERED.**

**Dated:    September 16, 2020**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**